UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
LISA KNEPPLE-HODYNO,                               :
                                                   :
                        Plaintiff,                 :
                                                   :           **MEMORANDUM AND ORDER**
             -against-                             :           11-cv-443 (DLI)
                                                   :
MICHAEL J. ASTRUE,                                 :
COMMISSIONER OF SOCIAL SECURITY,                   :
                                                   :
                        Defendant.                 :
---------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Lisa Knepple-Hodyno ("Plaintiff") filed an application for disability insurance benefits under the Social Security Act (the "Act") on November 27, 2006 alleging a disability that began on June 7, 2006. Plaintiff's application was denied, and, on reconsideration, Plaintiff appeared and testified at a hearing held before Administrative Law Judge David Z. Nisnewitz ("ALJ") on July 1, 2008. By decision dated December 29, 2008, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. On November 29, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). The Commissioner moved for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. (*See* Comm'r Mot. for J. on the Pleadings, Dkt. Entry 9.) Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision and remand. Plaintiff contends that the ALJ failed to: (i) weigh the treating physicians' opinions and develop the record properly; and (ii) evaluate

Plaintiff's credibility properly. (*See* Pl. Mem. of Law in Supp. of Pl.'s Cross Mot. for J. on the Pleadings, Dkt. Entry 12 ("Pl. Mem.").)

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and the matter is remanded for further administrative proceedings consistent with this opinion.

## BACKGROUND

A.  **Non-medical and Testimonial Evidence**

On July 1, 2008, Plaintiff, represented by counsel, appeared and testified at a hearing concerning her disability claim. (R. 18-89.)[1] Plaintiff, born in 1958, completed one year of college. (R. 128, 161.) From 1983 until the onset of her alleged disability in 2006, Plaintiff worked as a medical assistant and an office manager in a doctor's office. (R. 154.) Plaintiff's daily duties included assisting the doctor with medical procedures, preparing patients for treatments, checking patient's vital signs, data entry and various administrative functions. (*Id*.) This job involved seven hours of standing/walking, no sitting, two hours of climbing and frequently lifting up to ten pounds. (R. 154-55.) Plaintiff was laid off from her job in July 2006 because her employer knew that she was experiencing pain in her lower back radiating down to her feet, and would need surgery. (R. 21-23.)

At the time she applied for disability benefits, Plaintiff's daily routine included light chores, such as preparing meals, dusting, laundry and vacuuming. (R. 170.) Plaintiff could walk for a half of a block before feeling discomfort and for an additional half of a block with difficulty. (R. 29-30.) Plaintiff underwent spinal stenosis surgery in July 2007, after which she felt "slightly" better. (R. 28.) However, Plaintiff fell in March 2008 and sustained a herniated

---

[1] "R." citations are to the correspondingly numbered pages in the certified administrative record. (*See* Dkt. Entry 14.)

disk. (R. 32.) She did not require additional surgery following the fall, but she was referred to pain management and prescribed Tylenol Extra Strength. (R. 34, 42.)

Vocational Expert Andrew Pasternak ("VE") also testified at the hearing. (R. 87-88.) The VE explained that Plaintiff's previous work was as a medical assistant, which is a light exertional skilled job, and an office manager, which is a sedentary skilled job. (R. 87.)

**B.     Medical Evidence**

    **1.     Medical Evidence Prior to Alleged Onset Date**

On October 6, 2005, Dr. Raymond Keller took lumbar spine x-rays, which showed evidence of grade 1 spondylolisthesis of L4-5 and degenerative disc disease in L4-5 and L5-S1, but that alignment and curvature of the spine were unremarkable, and vertebral body heights were intact. (R. 314.)

On February 8, 2006, Plaintiff underwent an MRI, which showed degenerative disc and more striking apophyseal joint disease bilaterally at L4-5, with a resultant grade 1 anterior spondylolisthesis of L4 upon L5. (R. 235.)

Plaintiff saw Dr. Paul Kuflik of the Spine Institute of New York on March 29, 2006. (R. 233-34.) Dr. Kuflik reported that Plaintiff appeared quite uncomfortable, though she had a normal gait and was able to heel and toe walk. (R. 233.) Based on his examination and an MRI Plaintiff brought with her to the appointment, Dr. Kuflik diagnosed "quite severe" spinal stenosis and spondylolisthesis and opined that Plaintiff probably would not obtain lasting relief without surgery. (*Id*.) On April 11, 2006, Dr. Norman Schoenberg examined Plaintiff and also diagnosed her with spinal stenosis and spondylolisthesis, as well as degenerative disk disease and osteoarthritis. (R. 363.)

## 2. Medical Evidence on or after Alleged Onset Date

On July 24, 2006, Plaintiff was examined by Dr. Richard Gasalberti, a clinical instructor with New York University. (*See* R. 400-03.) Dr. Gasalberti noted that Plaintiff complained of lower back pain that gets worse when sitting, standing, walking and bending, but that she wished to avoid surgery. (R. 400.) Dr. Gasalberti reported that Plaintiff had mild lumbar scoliosis, was able to flex her trunk to 70 degrees with lateral rotation to 10 degrees, and a straight leg raising test was positive at 50 degrees. (R. 402.) He recommended electromyography ("EMG") and nerve conduction studies of the lower extremities, use of a corset for comfort and support, physical therapy and epidural steroid injections. (R. 402-03.)

Plaintiff saw Dr. Gasalberti again on August 10, 2006. (R. 408-09.) Plaintiff reported that her pain was about an eight on a ten-point scale. (R. 408.) X-rays revealed that Plaintiff suffered from mild degenerative disease and an EMG study showed clinical lumbar raidculopathy. (*Id.*) Plaintiff's straight leg raising was negative, trunk flexion was to 75 degrees and paraspinal spasms were evident on deep palpation. (*Id.*) Dr. Gasalberti again diagnosed chronic lower back pain, mild spondylosis, apophyseal joint degenerative disease bilaterally and disc bulging at L5-S1. (*Id.*) He also diagnosed clinical lumbar radiculopathy, facet syndrome, sacroiliac joint pain, sacroilitis and mild degenerative joint disease of the sacroiliac joints. (*Id.*) Dr. Gasalberti reiterated his diagnosis following an August 15, 2006 examination. (R. 410.)

On February 27, 2007, at the direction of the Commissioner, Plaintiff submitted to a consultative orthopedic examination by Dr. Steven Calvino. (R. 458-61.) Plaintiff reported excruciating lower back pain radiating into her legs. (R. 458.) Plaintiff also claimed that she had numbness throughout her bilateral lower extremities down to her feet. (*Id.*) Dr. Calvino found that Plaintiff had a normal gait and was able to walk on her heels and toes without difficulty. (R.

4

459). She needed no help getting on and off the examination table and she rose from her chair without difficulty. (*Id*.) Forward flexion of Plaintiff's lumbar spine was limited to 30 degrees during the examination, but Dr. Calvino observed Plaintiff flexing to 90 degrees after the examination when she picked up papers off the floor. (R. 460.) She had full lateral flexion and rotation of the lumbar spine, and she had no spinal or paraspinal tenderness or spasm in the thoracic and lumbar areas. (*Id*.) Dr. Calvino diagnosed Plaintiff with chronic low back pain, and concluded that Plaintiff's prognosis was excellent and she had no restrictions. (*Id*.)

On March 3, 2007, Plaintiff underwent another MRI. (R. 462.) Dr. Kuflik reviewed the MRI and found that it revealed grade II spondylolisthesis, severe central canal stenosis, a left paracentral disc herniation at L5-S1, impinging upon the left ventral aspect of the thecal sac and left S1 nerve root and degenerative disease. (R. 462-63.)

Dr. Kuflik examined Plaintiff again on April 27, 2007. (R. 519.) He reported that Plaintiff is "quite incapacitated," and that she had a marked restriction of motion of her lumbar spine, but a normal gait. (*Id*.) X-rays showed spondylolisthesis, and an MRI showed complete occlusion of the spinal canal. (*Id*.) Dr. Kuflik recommended surgery to which Plaintiff agreed. (*Id*.)

On May 11, 2007, Dr. Kuflik completed a lumbar spine residual functional capacity questionnaire. (R. 520-24). Dr. Kuflik reiterated his previous diagnoses and said that Plaintiff had extreme difficulty walking and standing. (R. 520.) In assessing her functioning, Dr. Kuflik explained that Plaintiff could not walk any city blocks without pain, could sit for 30 minutes, stand for 20 minutes, and was limited to less than two hours of sitting and standing in an eight-hour work day. (R. 521-22.) He added that she could lift up to ten pounds occasionally, but nothing frequently, and she could never twist or climb ladders. (R. 523.)

5

On June 11, 2007, Plaintiff underwent a lumbar laminectomy at L4 and L5 and a lumbar laminotomy and diskectomy at L5-S1, performed by Dr. Kuflik. (R. 527-29.) Dr. Kuflik reported that Plaintiff tolerated the surgery well. (R. 529.)

Plaintiff reported to Dr. Kuflik on July 24, 2007 that she was doing "very well" and felt "great." (R. 570.) She stated that her back and leg pain were much improved, and that her only real complaint was numbness and tingling radiating down her left arm. (*Id*.) Dr. Kuflik recommended an MRI of her cervical spine and suggested that Plaintiff wean off her medication. (*Id*.) On September 19, 2007, Dr. Kuflik saw Plaintiff and reported that "[b]y in large she is doing well." (R. 569.) He reported further that Plaintiff had weaned herself off the pain medication, taking it only on occasion, but still had some leg discomfort. (*Id*.)

Dr. Gasalberti examined Plaintiff on October 6, 2007, and said that Plaintiff could trunk flex up to 70 degrees. (R. 531.) He also reported that Plaintiff was still experiencing pain of eight on a ten-point scale. (*Id*.)

On October 29, 2007, Dr. Kuflik wrote a note stating that Plaintiff had been unable to work since July 3, 2006. (R. 561). In November 2007, Dr. Gasalberti wrote a similar note explaining that Plaintiff was totally disabled and may not return to work because of lumbosacral radiculopathy and low back myfascial pain syndrome. (R. 530.)

On December 17, 2007, Dr. Kuflik examined Plaintiff and stated that she was doing much better than prior to the surgery, though she still had some discomfort. (R. 568.) Two days later, he wrote a letter stating that Plaintiff was unable to sit for long, extended periods, until further notice. (R. 560.) Plaintiff returned to see Dr. Kuflik on March 19, 2008. (R. 567.) She told Dr. Kuflik that she had fallen two weeks before, and that she had significant pain in the area of the thoracolumbar junction. (*Id*.) An x-ray of the area showed degenerative disease and

suspicion of a compression fracture. (*Id.*) On April 11, 2008, MRI scans on Plaintiff's back showed that her sacroiliac joints appeared normal, with no fracture, and she had mild tendonopathy. (R. 578.) The scans also revealed a mild central disc protrusion in her thoracic spine at T10-T11, without spinal stenosis. (R. 590.)

During Plaintiff's hearing before the ALJ, Dr. Louis Lombardi testified as a medical expert. (R. 39-87.) Dr. Lombardi testified that it usually takes a least a year to recover from the type of surgery Plaintiff underwent, but that there was no documentation showing that Plaintiff specifically was impaired for one year before and after her surgery. (R. 53-54.) Dr. Lombardi also opined that, according to the medical record, Plaintiff had the residual functional capacity ("RFC") to perform light work, carry approximately 20 pounds and stand or sit for six hours per day with rest periods. (R. 54-55.)

### 3. Evidence Submitted to the Appeals Council

Plaintiff submitted to the Appeals Council several examination reports dated after her hearing before the ALJ. On August 21, 2008, Dr. Gasalberti examined Plaintiff and found that she exhibited lumbar scoliosis and paraspinal spasms at L3-4, L4-5 and L5-S1. (R. 654.) He asked for approval for physical therapy and epidural steroid injections to the lumbar spine. (R. 654-55.)

On September 29, 2008, Plaintiff was treated by a neurologist, Dr. Jagga Alluri. (R. 648-51.) He diagnosed lumbar radiculopathy, restless leg syndrome, spinal stenosis and status post laminectomy L4 through S1. (R. 650.) Plaintiff saw Dr. Alluri again on October 13, 2008. (R. 646.) Plaintiff complained of lower back pain with shooting pain down both lower extremities, and was diagnosed with lumbar radiculopathy and moderate to severe spinal canal stenosis L4-5. (*Id.*)

Dr. Gasalberti examined Plaintiff again on October 14, 2008. (R. 656.) Plaintiff was unable to trunk flex zero to 60 degrees and deep palpation showed paraspinal spasms L4-5. (*Id*.) Dr. Gasalberti recommended physical therapy and epidural lumbar injections to the lower spine, and told Plaintiff to wear a corset for comfort and support. (R. 656-57.)

Plaintiff returned to Dr. Alluri on January 28, 2009. (R. 644-45.) Plaintiff complained of unstable balance with dizziness upon walking and weakness in the lower extremities (R. 644.) On neurological examination, Plaintiff was alert and oriented, with cranial nerves intact. (*Id*.) Dr. Alluri recommended an MRI of the cervical spine, referred Plaintiff to pain management and advised Plaintiff to avoid heavy lifting. (R. 645.)

On March 24, 2009, Dr. Gasalberti again examined Plaintiff. (R. 658-59.) Plaintiff reported intermittent neck pain, dropping of objects, difficulty putting on socks and shoes and that she could not perform household chores. (*Id*.) Plaintiff was unable to trunk flex greater than 20 degrees and was in severe pain doing so. (*Id*.) Plaintiff was also unable to perform a deep knee bend and she required assistance getting onto the examination table. (*Id*.) Dr. Gasalberti concluded that Plaintiff was totally disabled for any employment. (R. 659.)

## DISCUSSION

### I. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v.*

*Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999).

## II. Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's RFC in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002)

(citing *Carroll,* 705 F. 2d at 642).

### III. The ALJ's Decision

On December 29, 2008, the ALJ issued his decision denying Plaintiff's claim. (R. 11-17.) The ALJ followed the five-step procedure to make his determination that Plaintiff could return to her previous work and, therefore, is not disabled. (R. 13-17.) At the first step, the ALJ determined that Plaintiff had not worked since her alleged onset date of June 7, 2006. (R. 13.) At the second step, the ALJ found the following severe impairments: low back pain post-surgery and radiculopathy. (*Id.*) At the third step, the ALJ, giving "special considerations" to the listings of musculoskeletal disorders, concluded that Plaintiff's impairments in combination or individually did not meet or equal an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. (*Id.*)

At the fourth step, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567, and, therefore, could return to her past work as a medical assistant. (R. 13-17.) The ALJ concluded that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds regularly, and could stand, walk and sit for up to six hours each, with regular breaks, in an eight-hour workday. (R. 14.) The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible to the extent they are inconsistent with the ALJ's RFC assessment. (R. 16.) The ALJ gave "great weight" to the opinions by the treating surgeon, but not controlling weight, because the ALJ found that his conclusions were not supported by clinical findings and diagnostic tests, and the limitations found by the doctor were not pertinent to the period at issue. (R. 16-17.) The ALJ also gave "great weight" to the opinions of the testifying medical examiner and the consultative physician. (R. 17.)

11

## IV. Application

Plaintiff moved for judgment on the pleadings, contending that the ALJ incorrectly: (i) applied the treating physician rule and should have sought more information from her treating physician; and (ii) found Plaintiff's testimony not credible. (*See* Pl. Mem.) The Commissioner moved for judgment on the pleadings, seeking affirmance of the Commissioner's determination, asserting that the ALJ properly weighed the medical evidence and evaluated Plaintiff's testimony. (*See* Mem. of Law in Supp. of the Def.'s Mot. for J. on the Pleadings, Dkt. Entry 10 ("Comm'r Mem."), at 18-24.)

### A. Treating Physician Rule and Failure to Develop a Full Record

Plaintiff contends that the ALJ gave no explanation for his decision to give the findings and opinions of Plaintiff's treating surgeon, Dr. Kuflik, less than controlling weight, while giving the opinions of the consulting physician, Dr. Calvino, and medical expert, Dr. Lombardi, "great weight." (*See* Pl. Mem. 15-17.) Plaintiff further asserts that, even if there was merit in finding that Drs. Calvino's and Lombardi's opinions undermine Dr. Kuflik's opinion, the ALJ had to recontact Dr. Kuflik before resolving any conflicts and ambiguities. (*See id.* 17-19.) The Commissioner contends that the ALJ properly found that Dr. Kuflik's opinion was not entitled to controlling weight because it was inconsistent with other opinions by Drs. Calvino, Lombardi and Gasalberti, and the opinion was drafted before Plaintiff underwent back surgery, which led to some improvement. (*See* Comm'r Mem. 18-22.)

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d. Cir. 2003). A claimant's treating physician is one "who has

12

provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v.* Astrue, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Social Security*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ's adherence to the treating physician rule operates in tandem with the affirmative duty to develop a full and fair record. *See Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d)-(f) (setting forth the affirmative obligations of ALJs); *see also supra* § I.

Here, in deciding what weight to give Plaintiff's treating physicians, the ALJ did not consider the necessary factors as required in 20 C.F.R. § 404.1527(c)(2). Instead, the ALJ simply concluded that "the treating source records are not supported by clinical findings and

diagnostic tests and are not granted controlling weight," and the limitations the treating sources described "are not pertinent to the period at issue and his opinion is contradicted by significant other evidence in the record." (R. 16-17.) The ALJ provided no further explanation, including any clarification as to what findings did not support those of the treating physicians. The ALJ was obligated to provide such an explanation in order to allow for meaningful review, as part of a full appraisal under all of the regulatory factors. Because the ALJ did not do so, the case must be remanded so the ALJ can reconsider the appropriate weight to give the treating physicians' findings. *See Pimenta v. Barnhart*, 2006 WL 2356145, at *5 (S.D.N.Y. Aug. 14, 2006) (remand appropriate where "the ALJ did not discuss [the treating physician's] qualifications, or the length, frequency, nature, and extent of his relationship with the plaintiff").

Notably, to the extent that the ALJ's statement that the limitations described by Dr. Kuflik were not "pertinent to the period at issue" refers to the fact that Dr. Kuflik's RFC assessment was completed before Plaintiff underwent surgery, this holding was erroneous. Plaintiff claims that her disability began in June 2006, well before the surgery in July 2007, and Dr. Kuflik completed his RFC assessment in May 2007. His RFC conclusions, therefore, are from the period pertinent to her disability, and cannot be disregarded completely on those grounds. Moreover, following the surgery, Dr. Kuflik again reported that Plaintiff still was unable to work and could not sit for extended periods. (*See* R. 560-61.) Another treating physician, Dr. Gasalberti, who the ALJ largely ignored, wrote a similar note after Plaintiff's surgery, explaining that Plaintiff was totally disabled and may not return to work because of loumbosacral radiculopathy and low back myfascial pain syndrome. (R. 530.)

In addition, if the ALJ determined that Dr. Kuflik's opinions were stale because the surgery changed Plaintiff's RFC, then the ALJ should have asked for an updated assessment

14

from Dr. Kuflik, as well as any other relevant treating physician, as part of the ALJ's duty to develop the record. *See Shaw v. Chater*, 221 F. 3d 126, 134 (2d Cir. 2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel.").

While the issue was not raised by Plaintiff, the court also notes that Plaintiff submitted to the Appeals Council two reports from treating physicians, Dr. Alluri and Dr. Gasalberti, that were drafted after the ALJ's decision. (R. 644-45, 658-59.) Contrary to the ALJ's implicit findings, these reports contain medical evidence tending to show that Plaintiff's surgery may not have ameliorated her pain or enabled her to work. Under the Act, a claimant may submit "new and material evidence" to the Appeals Council "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b); *see also Pollard v. Halter*, 377 F. 3d 183, 193 (2d Cir. 2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the] claims."). When new materials are submitted from treating physicians, the Appeals Council is "obligated to provide an explanation for [its] decision not to afford controlling weight to an assessment apparently provided by Plaintiff's treating physician." *Lucas v. Astrue*, 2009 WL 3334345, at *5 (N.D.N.Y. Oct. 14, 2009). Here, the Appeals Council provided no explanation as to why it did not give this new evidence controlling weight. On remand, the ALJ must consider this new evidence, as well as any other new pertinent evidence shedding light on Plaintiff's condition after her surgery, and accord it the proper weight.

Accordingly, because the ALJ failed to weigh the treating physicians' evidence in accordance with the regulatory factors, remand is necessary.

### B. Plaintiff's Credibility

Plaintiff contends that the ALJ erroneously discounted Plaintiff's credibility because he did not provide specific reasons for his credibility determination, and because Plaintiff's testimony was consistent with the medical record. (*See* Pl. Mem. 19-21.) The Commissioner argues that the ALJ correctly evaluated Plaintiff's subjective complaints because Plaintiff admitted that she performed light chores and the consultative examiner witnessed Plaintiff bend over to pick a piece of paper on the floor. (*See* Comm'r Mem. 22-23.)

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2010). However, the ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p.

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. Where the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause her alleged symptoms, but that her testimony was not credible to the extent that it was inconsistent with the ALJ's RFC assessment. (R. 16.) The ALJ also explained that Plaintiff's allegations of limitations following her surgery were not credible because she has received "little medical care" since her surgery and the care she received was "conservative."

(*Id.*)  The ALJ also stated that Plaintiff's daily activities suggest that she has "improved greatly" following surgery.  (*Id.*)

The ALJ's analysis is insufficient because he failed to consider all of the seven credibility factors pursuant to 20 C.F.R. § 404.1529(c)(3)(i)-(vii).  For example, the ALJ provides no analysis whatsoever as to the frequency and intensity of Plaintiff's pain.  While there is some evidence in the record that Plaintiff's pain lessened shortly after her surgery, the ALJ did not reconcile it with evidence that Plaintiff still felt pain at a level of eight on a ten-point scale (*see* R. 531), and the pain may have worsened after her fall in March 2008.  (*See* R. 567.)  The ALJ also made no specific mention of Plaintiff's daily activities.  The Commissioner recites a litany of light chores Plaintiff said she was able to do, but there is no evidence as to how these basic chores show that Plaintiff was not in pain and able to maintain employment.  *See Kaplan v. Barnhart*, 2004 WL 528440, at *3 (E.D.N.Y. Feb. 24, 2004) ("[T]he Second Circuit has held that an individual who engages in activities of daily living, especially when these activities are not engaged in 'for sustained periods comparable to those required to hold a sedentary job,' may still be found to be disabled." (quoting *Balsamo v. Chater*, 142 F. 3d 75, 81 (2d Cir. 1998)).  In any event, the court is not bound to accept the Commissioner's *post hoc* reasons that the ALJ did not address.  *Snell v. Apfel*, 177 F. 3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action." (quotation marks omitted)).

In addition, the only consideration the ALJ gave to measures Plaintiff used to alleviate her pain post-surgery was to dismiss it as "conservative."  (*See* R. 16.)  The Second Circuit has held that such conclusory characterization by an ALJ does not provide substantial evidence that a plaintiff is not disabled.  *See Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005) ("[T]he ALJ erred in questioning the validity of Dr. Sargiss's opinion based on his 'conservative' course

of treatment."). Indeed, the evidence submitted to the Appeals Council shows that Plaintiff was receiving epidural injections to her spine in 2008 (*see* R. 654-56), which calls into question whether Plaintiff's therapy after the surgery was conservative.

Therefore, the court remands this action so the ALJ can reassess Plaintiff's credibility in light of all the regulatory factors and the new evidence submitted to the Appeals Council.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is denied and Plaintiff's motion for judgment on the pleadings is granted. Accordingly, pursuant to the fourth and sixth sentences of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. Specifically, on remand, the ALJ is to: (i) set forth the weight he gives to Plaintiff's treating physicians and detail his rationale for according the treating physicians that weight, after considering all of the relevant factors and any new evidence submitted; (ii) reweigh Plaintiff's credibility and explain the weight given to Plaintiff's testimony in light of all of the regulatory factors; and (iii) expand the record as necessary to address the deficiencies noted in this Memorandum and Order.

SO ORDERED

DATED:     Brooklyn, New York
               September 10, 2012

_____/s/_____
DORA L. IRIZARRY
United States District Judge